[No. 833.  Decided July 13, 1893.]

JOHN W. KLEEB, *Respondent*, v. FRANK M. BARD AND H. C. PATRICK, *Appellants*.

PRACTICE — SUPPLEMENTAL COMPLAINT — PLEADING — STATUTE OF FRAUDS — SALE OF STANDING TIMBER — PAROL CONTRACT FOR SALE OF LOGS — EXCESSIVE JUDGMENT — WARRANTY.

Where an action, which is properly one of equitable cognizance, has been treated by all parties as an action at law for money, it is not error for the court to permit the filing of a supplemental complaint asking for judgment generally against the defendants, after their action has put it out of plaintiff's power to secure equitable relief.

An allegation in a complaint that plaintiff was the owner of certain property at the date he contracted to sell it to defendants is immaterial if he was the owner and able to make delivery of the property when the time for performance arrived.

An executory contract for the sale of standing timber is valid when in writing, although not in the form of a deed, and such contract can be enforced by an assignee.

A verbal contract by the owner of land, whereby he agrees to cut all the cedar timber on his land and deliver the logs for a certain price per thousand feet at the mill of another party, is a contract respecting the sale of chattels, and, where there has been part performance of the contract, it may be enforced against the owner, though not in writing.

Where a party contracted to sell "all the cedar timber now on sec. 27," without any qualification or reference to any other contract, and had title to but 400 of the 640 acres thereof, a judgment in his favor for the value of all the timber upon such section, in an action to recover the price from a purchaser, should be reduced by an amount equal to the value of the timber upon 240 acres.

Where a contract for the sale of saw mill engines describes them as of certain horse power, and there is no covenant of warranty to do certain work in the contract, or representation as to their capability, an instruction by the court, in an action for damages for breach of warranty, that if the engines were less than the horse power mentioned in the contract the measure of damages would be the difference between the value of these engines and such engines as the contract called for, is not prejudicial to the party claiming a breach of warranty.

*Appeal from Superior Court, Pierce County.*

*Town & Likens,* for appellants.

*Govnor Teats,* and *Parsons, Corell & Parsons,* for respondent.

The opinion of the court was delivered by

STILES, J.— 1. The appellants now complain of the action of the superior court because of the manner in which it permitted the respondent to amend his complaint under the direction of this court in *Bard v. Kleeb,* 1 Wash. 370 (25 Pac. Rep. 467). The new complaint showed that the property covered by the contract had been delivered to the appellants, and had been by them resold to third parties; that a tender of a conveyance in writing had been made to them; and that the sum unpaid under the contract had fallen due long before the date of the pleading. All of these matters could have been covered by the original complaint, had the facts now stated been past events, and the respondent would have had his choice, either to foreclose the lien agreed to be given to him through a mortgage, or to have his judgment generally against the appellants. The latter course is now forced upon him, since the appellants have put it out of their power to make the mortgage for which their contract called. Moreover, as was said in the former decision, all parties have from the beginning treated this as an action at law for money, and not as an equity case, and they are bound by their action.

2. A vast amount of the trouble in this case has grown out of the attempt of the appellants to bind the respondent to a conclusion of law unnecessarily stated in his complaint, viz., that at the date of his contract he was the owner and possessor of certain property, the subject of the contract. But even if taken as a statement of fact, rather than law, this allegation was not material. Respondent, on

the 8th day of October, 1888, contracted that on the 20th day of that month he would convey and transfer certain property to the appellants, but it was nobody's concern but his own whether at that time he owned any part of it or not. If, when the time came for the performance of the agreement, he was able to perform, the appellants could not complain.

3. The next complaint is, that the contract called for the title to the three parcels of standing timber mentioned, which was not forthcoming. Against this, the respondent contends that he was only to convey his right, title and interest, whatever it was — substantially a quitclaim. The materiality of this contention is, that the owner of one tract (Perry) refused to permit the appellants to take any timber under the agreement made with respondent. The owner of the second tract (Guilliams) delivered a portion of the logs contracted for, and then refused to deliver any more, on the ground that his contract was a merely verbal one, which he could break at his pleasure; and the third tract (Morrill) fell 240 acres short. The contract clearly showed that the Perry and the Guilliams timber was not undertaken to be sold at all, but that, in substance, an assignment of the rights of the respondent under his agreements with the two landowners was to be made, for it was recited that these parcels of timber were to be "transferred according to the contract now existing between me and" the two owners, and the appellants bound themselves to carry out these contracts. As to the Morrill tract, the language of the contract was different, being: "All the cedar timber now on sec. 27," without any qualification or reference to any other contract. Respondent's title to the cedar on 400 acres of section 27 is not, however, assailable, for at all times when he was required to have the title to that much of it he had it by deed of warranty, and no showing is

made of any infirmity in this deed whereby no title passed. As to the Perry tract, conceding that an executory contract ·to sell standing timber to be cut and removed by the purchaser is a contract for the sale of an interest in land, and therefore within the statute of frauds (1 Warv., Vend., p. 175; *Owens v. Lewis*, 46 Ind. 488), still we are unable to see why the contract which respondent held from the Perrys did not meet this requirement. True, it was not a deed, but it is not necessary that a contract to sell land, as such, be a deed. The terms of this instrument showed that it was intended to be merely a license to occupy the land for such time and in such manner as should be required to remove the merchantable timber therefrom, with the right to take the timber at fifty cents per thousand feet, to build and operate a sawmill, to use the water privileges on the land in connection with the mill, and to remove the mill after the timber had been manufactured. Neither the land, nor any interest in the land as land, was contemplated; but the timber was the principal subject matter of the contract, to which all the other uses to which the land might be put were incidents. Nothing in this contract created any exclusive right in the grantee to occupy the tract. On the contrary, both parties to it might have been exercising dominion over the whole of it at the same time, the Perrys in every way not inconsistent with the prosecution of the lumbering business by the respondent, and the latter in every way necessary to his business. These considerations, it seems to us, take such cases out of the purview of Gen. Stat., § 1422, which prescribes that conveyances of lands or interests therein shall be by deed. Therefore, although, when the appellants proposed to go on with the Perry contract, they were forbidden to enter upon the land, or cut any timber, on the ground that their contract had expired or been forfeited, it remained that it had not expired or

been forfeited, and they could have been compelled to execute it; so that appellants were not released from their agreement with respondent by any such acts of hostility.

The Guilliams contract was an entirely different matter. That was an agreement on Guilliams' part to cut down all the cedar timber on his land, and deliver the logs to respondent at his mill, at $4.50 per thousand feet. It was a merely verbal contract, but it respected the sale of chattels only, viz., logs; and, as a considerable portion of the contract to sell had already been performed, there was a full compliance with the statute of frauds in that instance. *Owens v. Lewis, supra; Smith v. Surman,* 9 Barn. & C. 561. When appellants took possession of the mill Guilliams continued to deliver logs to them under his contract with respondent, and then refused further delivery because his contract was merely a verbal one. He should have been required to go on, or respond in damages. But in neither the Perry nor the Guilliams case was respondent at fault. He sold and delivered the mills, and put the appellants in the same position with respect to his contracts with those men which he occupied. Appellants, without waiting to receive a conveyance in writing (if one was necessary), and without paying the cash agreed to be paid, took possession, and in every way put themselves in the wrong as far as a refusal to pay the price agreed upon was concerned; and, finally, they sold out the whole property at a large advance. Such property as they took they must pay for, all the troubles about tenders of payment on the one part and of papers on the other having been obviated by the acceptance of the property by the appellants, and their going into possession.

4. The contract called for two engines, one of which was described as a portable sawmill engine, of eighteen horse power, and the sawmill, etc., situated at a certain place; and the other was a forty horse power engine and boiler, etc.,

at another place. Appellants counterclaimed for damages under the allegation that the engines were of only ten and eighteen horse power, respectively, and that the respondent had guarantied them to be of the larger horse power mentioned in the contract. They further alleged knowledge on the part of respondent that appellants were desiring to buy engines for certain work, which could not be done unless they had eighteen and forty horse power, respectively, and that he represented that they would do that work. Damages were laid at $2,500; but, upon the trial, there was an entire failure to prove any representations as to what work the engines were capable of. Much testimony was introduced as to the horse power of each engine, and it was so contradictory that we have no right to review it, as the weight of it was entirely for the jury. The terms of the contract, however, show almost conclusively that the references to horse power there used were merely descriptive of the particular machines intended to be sold. Respondent was offering two certain engines, located at certain places, not two engines of eighteen and forty horse power generally. Appellants had seen the engines, and were content to buy them, and any warranty of their capacity must have been included in the contract, which was put in writing. The charge which the court gave, to the effect that, if the engines were of less than the horse power mentioned in the contract, the measure of damages would be the difference between the value of these engines and such engines as the contract called for, was superfluous, because there was no evidence of any such value; but it did the appellants no injury, since their theory, viz., of a warranty to do certain work, was entirely unsupported, either in the way of representations or by covenant in the contract.

5. What has gone before leads to an affirmance of the judgment, but there is one point upon which there should be a reversal, unless there is a voluntary reduction by the

respondent. We have held that the contract called for a sale of all of the timber on section 27, and that this item was partially fulfilled by the transfer or offer to transfer the Morrill tract, of 400 acres. But the 240 acres remaining in section 27 did not belong to respondent, nor did he have any contract in reference thereto. Appellants are therefore entitled to have a reduction from the purchase price, measured by the value of the timber found to have been upon the 240 acres. The court below charged the jury upon this point, but it would appear from the verdict, which was for the full sum demanded, that the charge was overlooked or disregarded. The undisputed proof was that there were 800,000 feet of timber on the 240 acres, and that it was worth fifty cents a thousand; wherefore appellants will be entitled to a reduction of $400 out of the judgment, with interest thereon at 8 per cent. per annum from October 20, 1888. And unless respondent shall within thirty days after the filing of this decision file his consent to such reduction, the judgment will be reversed, and a new trial granted; otherwise, the judgment, as modified, will be affirmed.

The errors assigned in this case are, in an appellate sense, innumerable. Those we have noticed cover such of them as are material. The others were mostly brought into the record through a wide departure from the actual issues involved.

DUNBAR, C. J., and HOYT and ANDERS, JJ., concur.

SCOTT, J., concurs in the result.