THE DIEBOLD SAFE AND LOCK COMPANY v. HUSTON
& BREEDING.

FIRE-PROOF SAFE — *Warranty* — *Parol Evidence.* Plaintiffs or-
dered from the defendant a No. 4 fire-proof safe. The order was
in writing. It contained no reference to a warranty. A safe was
delivered in compliance with the order, and received and used by
the plaintiffs in which to store valuable papers. The building in
which it was kept was afterward destroyed by fire, and some of the
contents of the safe were consumed, *held,* (1) that parol evidence
was inadmissible to prove a warranty made at the time the order
was given; (2) that the words "fire-proof safe" do not imply a
warranty of the quality of the safe, or that it will protect its con-
tents from fire for any definite period, or under any given circum-
stances.

*Error from Nemaha District Court.*

THIS case was commenced before a justice of the
peace of the city of Seneca, and the plaintiffs obtained
judgment for $172 and costs. The defendant appealed
to the district court, where an amended petition was
filed, alleging in substance that the plaintiffs on or
about the 25th of July, 1889, purchased of the Die-
bold Safe and Lock Company a No. 4 Diebold safe,
which was represented and guaranteed to be fire-proof,
for which the plaintiffs agreed to pay $72, one-fourth
cash, and the balance in three equal payments; that
on the 18th day of January, 1890, the building in
which the safe was situated was burned, and the con-
tents of the safe, consisting of notes and accounts,
contracts and other valuable papers contained in said
safe were burned, and asking judgment for $247. J.
L. Breeding, one of the plaintiffs, testified that "the
agent warranted it to be fire-proof. He stated that
the company always did that; that they guaranteed
all their safes." He also testified that at the same
time a duplicate contract was entered into for the pur-
chase of the safe. The one of these duplicates signed

by the plaintiffs was introduced in evidence, and reads
as follows :

"SENECA, July 23, 1889.

"*Brintnall & Harrison, General Agents Diebold Safe
and Lock Company:* Please send me, as soon as con-
venient, one No. 4 fire-proof safe, approximate size
inside, 19 inches high, 15 inches wide, 12 inches deep,
as per page 8 of illustrated catalogue, and plan of in-
terior as specified on back of this order. Marked to
Huston & Breeding, town of Seneca, county of Ne-
maha, state of Kansas. Ship via town of St. Joseph,
and rent same to undersigned on following terms :
F. O. B. cars in Seneca, Kas., $72, as follows : $18
upon arrival ; balance in three notes of $18 each, due,
respectively, in 3, 6 and 9 months from shipment.
Said safe to be one of your latest styles, with all your
latest improvements, and to be as per illustrated cata-
logue. Front of safe to be a dark wine color and
finished in gold, and to be nicely finished and orna-
mented in your latest style. This order subject to
the approval of Brintnall & Harrison. All notes
given are to bear interest at the rate of 8 per cent.
per annum. It is agreed above sums are to be paid
as rent for said safe. When the full amount of $72
is paid, you are to give me a bill of sale of safe. If
note is not forwarded to you at the expiration of 20
days from date of invoice, all rent shall become due
at the expiration of 30 days from date of bill, and
agree to accept and pay draft of amount mentioned
below, and are not to countermand or attempt to an-
nul this contract. It is agreed that the title of said
safe shall not pass until notes are paid or safe paid
for in cash, but shall remain your property until that
time. In default of payment of said rent, you or your
agent may take possession of and remove said safe
without legal process. Nothing but shipment or de
livery constitutes an acceptance of this contract.
It is also hereby expressly agreed and understood
that the foregoing embodies all the agreements made
between us in any way, hereby waiving all claims of
verbal agreements of any nature not embodied in this
contract. I hold a duplicate copy of above contract.

Agents not authorized to make collections.   Amount,
$72.        Truly yours,     HUSTON & BREEDING.
" Witness, ———."

The jury rendered a verdict in favor of the plaintiffs
for $247, for which amount the judgment was entered.
The defendant brings the case to this court.

*Samuel K. Woodworth*, for plaintiff in error.

*E. G. Wilson*, for defendants in error.

The opinion of the court was delivered by

ALLEN, J. :  The plaintiff (Breeding) testified to an
oral warranty by the agent of the defendant that the
safe was fire-proof.   It will be observed that the writ-
ten order for the safe, made at the time, expressly pro-
vides that the title shall remain in the defendant until
the full purchase-price should be paid.   The evidence
shows that $18 was paid at the time of the delivery of
the safe, and that the first note was afterward paid.
At the time of the fire two notes still remained unpaid,
and the title to the property therefore was still in the de-
fendant.   There could not then be a technical warranty
of the article sold.   It is not necessary, however, to
nicely inquire into the difference in the mode of re-
covering damages for a breach of warranty and those
resulting from the use of an article furnished for a
particular purpose under a bailment.   The only ques-
tion we deem it necessary to decide is whether under
the testimony any such warranty was made as would
entitle the plaintiffs to recover, irrespective of the tech-
nical question.   It appears from the plaintiffs' own
evidence that the agreement which they
entered into with the agent of the safe
and lock company was reduced to writing.
Oral evidence therefore is inadmissable to
vary or enlarge its terms.   (*Drake v. Dodsworth*, 4 Kas.

*Written agree-
ment, oral
evidence not
to vary.*

160 ; *Brenner v. Luth*, 28 id. 581 ; *Hopkins v. Railway Co.*, 29 id. 544 ; *Furneaux v. Esterly*, 36 id. 539 ; *Windmill Co. v. Piercy*, 41 id. 763 ; *Willard v. Ostrander*, 46 id. 591.)

It is clear that the safe was delivered to the plaintiffs in compliance with the terms of the written order. Does this order contain what in law amounts to a warranty? There are no words in it of express warranty. Does an order, however, for a fire-proof safe imply a warranty? It is contended that this is a case of a sale of an article of the vendor's manufacture for a particular purpose, and imports a warranty that it is reasonably fit for that purpose, and free from latent defects arising in the process of manufacture and not disclosed to the vendor. In the case of *Lukens v. Freiund*, 27 Kas. 664, it appeared that the defendant was a miller ; that two copper clasps accidentally fell into some bran which was sold to the plaintiff. The clasps were swallowed by one of the plaintiff's cows and killed her. It was held that, in the absence of express warranty, the plaintiff could not recover for his cow. The second clause of the syllabus reads as follows :

"While, when an article is ordered from a manufacturer to be by him manufactured for a specific and understood purpose, there is in some cases an implied warranty that the articles when manufactured will be reasonably fit for the purpose intended, yet when a purchase is made from him of a specific and completed article, he is to be regarded as a dealer, and his liability determined accordingly."

There is nothing in this case indicating that the safe purchased by the plaintiffs was manufactured specially for them, but the fair inference is that it was one of a kind of safes which the defendant manufactured for sale to whomsoever would buy. It is

designated in the order as a "No. 4 fire-proof safe," and the order provides that it shall be one of the defendant's latest styles and improvements, thus clearly indicating that it is one of a kind of safes manufactured by the safe and lock company. "There is in America an implied warranty of identity, namely, that the article shall be of the kind or species it purports to be, or is described to be — that is, that the article delivered shall be the same thing contracted for." (Benj. Sales, [6th ed.] 636.) This proposition is illustrated in the following cases: In *Henshaw v. Robins*, 9 Metc. (Mass.) 83, a sale and bill of parcels of two cases of indigo was made. It was shown that the article paid for and delivered was not indigo at all, but composed of Prussian blue, chromate of iron and potash, and worthless for any purpose. It was held that the description of the article inserted in the bill of parcels amounted to a warranty that the article was such as represented. In *Hawkins v. Pemberton*, 51 N.Y. 198, it was held that the sale of an article as blue vitriol amounted to a warranty that it was such. In *Wolcott v. Mount*, 36 N. J. Law, 262, it was held that a sale of seed, which the seller said was early strap-leaf red-top turnip seed, was equivalent to a warranty that it was such, and that the purchaser might recover the difference between the market value of the crop raised and the same crop from such seed as was ordered. In *White v. Miller*, 71 N.Y. 118, it was held that on a sale of "large Bristol cabbage seed" to a market gardener, there was an implied warranty that the seed was not only raised from such stock, but free from any latent defect arising from the mode of cultivation, and would produce that kind of cabbage. In *Jones v. George*, 61 Tex. 345, it

was held that a sale by a druggist to a planter of an article as Paris green, implied a warranty that it was that substance.

There is no doubt, under the authorities, that the article sold must answer in kind to the description under which it is sold, and that there is an implied warranty that the article delivered is such an article as the name under which it is sold indicates. When, however, the question arises whether an article is of a particular quality or degree of excellence, unless it is designated by some term which is descriptive of the article and calls for a particular quality, the general rule is that no warranty of quality will be applied. In *Walcott v. Mount*, supra, it was said : " In general, the only contract which arises on the sale of an article by a description, by its known designation in the market, is that it is of the kind specified." In *Winsor v. Lombard*, 18 Pick. 57, it was held that where a large number of barrels of mackerel branded under the inspection laws as No. 1 and No. 2 mackerel were sold in the spring with that description of them in the bill of parcels, it was not a warranty that the mackerel were free from rust, although it appeared that mackerel affected by rust are not considered as No. 1 and No. 2. In *Gossler v. Sugar Refinery*, 103 Mass. 331, it was held that —

*No warranty of quality implied, when.*

" One who agreed to sell ' Manilla sugar ' to refiners, and delivered to them what is usually called in commerce by that name, can, in the absence of fraud, misrepresentation or warranty, recover the agreed price, though the article delivered contained more impurities than sugar known under that name usually does."

The case of *Shisler v. Baxter*, 109 Pa. St. 443, seems to be opposed to *White v. Miller*, supra, holding that

the sale of seed as Wakefield cabbage seed did not amount to a warranty that it was such, but was a representation as to quality. In *Towell v. Gatewood*, 2 Scam. 22, a bill of sale of good first- and second-rate tobacco was made. The court refused to treat this as a warranty, but rather as an expression of opinion as to the quality of the article sold concerning which the buyer should have relied on his own judgment or obtained an express warranty. "The mere description of iron sold as mill iron in a bill rendered to the purchaser will not amount to a warranty that the same is of the quality or grade described, but will be regarded as a mere statement of opinion or expression as to the quality." (*Iron Works v. Moore*, 78 Ill. 65. See, also, *Ryan v. Ulmer*, 108 Pa. St. 332 ; *Dounce v. Dow*, 64 N. Y. 411.) In *Fraley v. Dispham*, 10 Pa. St. 320, it was held that a sale bill of superior sweet-scented Kentucky leaf tobacco affords no evidence from which the jury may infer a warranty that it is either superior or sweet-scented. The case of *Shaw v. Smith*, 45 Kas. 334, was on a contract for the sale of flaxseed, which the buyer agreed to sow and sell the crop to the seller on certain terms stated in the contract. The seed proved worthless, and did not grow. It was held that under the contract, and in view of the purposes for which it was purchased, the buyer might recover as upon a warranty. In that case the purposes of the contract did not end with the delivery of the seed to the buyer, for he was obligated to sow the seed and to sell the crop which it might produce to the vendor. Under such a contract it was held that a warranty of the fitness of the seed for the purposes specified in the contract would be implied.

In the case under consideration, the plaintiffs ordered a fire-proof safe. There is no proof, nor was it

in fact claimed at the trial, that the article delivered did not answer the description; that is, that it was not such an article as is generally known and designated as a "fire-proof safe." The evidence shows that it was manufactured and placed on the market in the same way that other fire-proof safes were made. "Fire-proof" is defined by Webster, "proof against fire; incombustible."

The case of *Hickey v. Morrell*, 102 N. Y. 454, was an action against a warehouseman to recover for goods destroyed by fire in a warehouse represented to have a fire-proof exterior. It appeared that the window-frames and sash were wooden, and that there were no outside shutters, and it was held that the building could not be deemed fire-proof. In the course of the opinion it is said : "Here the allegation is that the exterior of the building is fire-proof. It necessarily refers to the quality of the material out of which it is constructed or which forms its exposed surface. To say of any article it is fire-proof, conveys no other idea than that the material out of which it is formed is incombustible." In the case of *Insurance Co. v. Hird*, 4 Tex. Civ. App. 82, in an action on a fire-insurance policy which stipulated —

"That the assured would keep his books in a fire-proof safe, and that in case of loss he would produce the books, and on failure to so produce them, the policy would become void. The books were in good faith kept in a safe of the kind generally known and reputed as fire-proof, but which failed to preserve them from destruction by fire. *Held*, That the insured had not warranted the safe to preserve the books, and that he complied with the condition."

It is not claimed in this case that the safe itself was constructed of combustible materials, nor that it was burned, or even greatly damaged by fire. The plain-

tiffs seek to recover solely for damages resulting from the burning of articles deposited in the safe. There was no contract or representation with reference to the degree of heat, or the length of time when exposed to a fire, against which the safe would afford protection. Safes denominated as "fire-proof" are made of various sizes, capacities, and styles. If the outside be made of iron, while that metal is commonly regarded as incombustible because it will not burn, it yet is not indestructible by fire. It is a matter of common knowledge that iron will melt when subjected to a sufficient degree of heat. To imply a warranty that the safe would protect its contents against any given exposure to fire, we think, would be to imply a warranty of quality, and that altogether indefinite in its terms, and imposing a liability which might be immensely disproportionate to the sum received. The recovery in this case was for more than three times the price of the safe. We are of the opinion that it was incumbent on the plaintiffs to inspect the safe when they received it for the purpose of ascertaining whether it was of the kind specified in the order; that if it was so, no warranty of quality was implied, and no recovery can be had for the destruction of its contents. The judgment is reversed.

All the Justices concurring.