[No. 8762.   Department Two.   May 26, 1910.]

CALDWELL BROS. & COMPANY, *Respondent*, v. COAST COAL
COMPANY, *Appellant*.[1]

SALES—CONTRACT—ACCEPTANCE—EVIDENCE—SUFFICIENCY.   An of-
fer to sell and deliver one article f. o. b. at S. and another article
f. o. b. at T., will be considered as unqualifiedly accepted by an
acceptance of both articles to be delivered f. o. b. at T., where there
was evidence of an oral acceptance of the proposal, both parties
acted upon the contract as consummated, and the purchaser re-
ceived and paid for part and claimed damages as to the balance.

SALES—PERFORMANCE—PARTIAL PAYMENTS—EFFECT—SETTLEMENT.
Upon a sale of two articles for a lump sum, and the refusal of the
vendee to accept one of them because of alleged insufficiency, the
vendor's acceptance of a sum of money in payment for one of the
articles, as a full settlement of that portion of the contract, does
not preclude him from recovering the balance of the contract price,
nor limit the recovery to the reasonable value of the other article,
if the contract was fully performed.

EVIDENCE—ADMISSIONS—DECLARATIONS OF AGENT—PRINCIPAL AND
AGENT.   The admission of an agent that his principal's contract had
not been performed and would not be enforced, made after the
transaction and after the controversy arose, is not competent as an
admission against interest, being only an expression of an agent's
opinion upon past rights and obligations.

SALES—CONTRACT—WARRANTY.   A contract to manufacture and
sell "one 400-ton Howe coal washer," according to plans and speci-
fications, which designated it as a Howe coal washer, "Capacity
400-tons per day," and which plans were prepared and agreed upon in
detail, is not a guarantee that it is capable of washing 400 tons of
coal a day, and is not breached by want of such capacity where it was
made according to the specifications.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered October 27, 1909, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, in an action on contract.   Af-
firmed.

[1]Reported in 108 Pac. 1075.

*F. S. Blattner* and *L. D. da Ponte*, for appellant.

*Shank & Smith*, for respondent.

Parker, J.—This action was commenced to recover the sum of $3,070, the contract price of a coal washer and a coal bunker. A trial in the superior court without a jury resulted in findings and judgment in favor of the plaintiff for the sum of $1,071, from which the defendant has appealed. The facts admitted by the pleadings and found by the trial court are, in substance, as follows:

The contract sued upon is evidenced by certain letters of proposal and acceptance thereof as follows:

"Coast Coal Co.,                         October 30th, 1907.
    "Tacoma, Wash.

"Gentlemen:—Complying with the request of Messrs. Dorr and Coffin, we are pleased to quote you on, and furnish specifications and drawing for one 400-ton coal bunker and washer. You will note that the specifications call for both flight and bucket elevators. This matter will be left to your option. We might also add that this equipment has been figured as nearly complete as has been possible, but, owing to the fact that it will be hard to determine the exact speed necessary for your washer to run until the nature of the work to be performed has been determined, we have left out two pulleys and the length of belt necessary to drive washer. The price of this equipment f. o. b. Tacoma is $3,435.00. We trust that you will favor us with this order, and we assure you that the same will receive our careful and prompt attention.

                    "Very truly yours,
                        "The Caldwell Brothers Co.
                            "By F. M. Caldwell."

"Coast Coal Co.,                         Nov. 1, 1907.
    "Tacoma, Wash.

"Gentlemen:—We beg to submit you, in addition to our proposition submitted to you on October 30, the following:

"We to furnish you all material named in our specifications accompanying our above named letter with the exception of the Jeffries-Howe washer, they to be supplemented by a locally built washer of the Howe type and furnished

with a No. 3 Gardner Duplex Regular fitted pump for
$3,070.00. All the material with the exception of the washer
f. o. b. our store Tacoma. The washer to be f. o. b. Seattle.
We trust that either one or the other of these propositions
will meet your approval, and that you will favor us with
your order which will receive our careful and prompt atten-
tion.                                Yours truly,
                        "The Caldwell Bros. Co."

"Caldwell Bros. Co.,    Tacoma, Washington, Nov. 5, 1907.
  "Tacoma, Washington.
  "Gentlemen:—We accept your proposition of November
1st, to furnish us with one 400-ton Howe coal washer and coal
bunker, according to specifications and blue print, furnished
f. o. b. Tacoma, $3,070. Terms upon same, $1,000.00 upon
receipt of shipping receipts, $1,000.00 thirty days and
$1,070 sixty days from date of shipping receipt.
                        "Coast Coal Company,
                        "Very truly yours,
                        "By Joseph K. Dorr, Secretary."

The respondent performed its part of the contract by
manufacturing the coal bunker and delivered it to appel-
lant, and by manufacturing the coal washer and tendering
it to appellant. Prior to the trial, appellant paid to re-
spondent $1,999 upon the contract price, leaving unpaid a
balance of $1,071. By agreement between the parties the
bunker was to be considered as fully paid for. The washer
having been tendered to and refused by appellant, respond-
ent holds it for appellant and to secure the balance due upon
the contract price. We will note other facts as may be neces-
sary in our discussion of the errors assigned.

It is first contended by learned counsel for appellant that
the contract evidenced by the letters and acceptance is not
complete, in that the offer of respondent was to deliver the
washer f. o. b. at Seattle and to deliver the bunker f. o. b. at
Tacoma, while the acceptance was for delivery of both at
Tacoma and was, therefore, not an unqualified acceptance of
the offer. There might be some merit in this contention if
the acceptance depended entirely upon the writings above

quoted.  But there was evidence tending to show that, in addition to the written acceptance, the appellant orally accepted the proposal of respondent, and in addition, both parties have treated and acted upon the contract as consummated; the respondent by manufacturing and tendering the machinery, and the appellant by accepting a part of it and paying a substantial part of the contract price.  The appellant has, also, by its cross-complaint, sought to recover damages for an alleged breach of the contract on the part of the respondent.  We think it clear that the contract must be regarded as having been entered into even though there may originally have been some uncertainty as to the place of delivery.

Several contentions are made in behalf of appellant based upon the theory that the balance due respondent, if any, is dependent upon the reasonable value of the washer; the trial court having excluded evidence of, and refused to consider, its reasonable value.  It is argued that, since the original contract was for a lump sum as the price for both the washer and bunker, upon settlement of a part of the controversy appellant became liable in any event only for the reasonable value of the remainder, to wit, the washer.  There is nothing in the record indicating that by this understanding between the parties, eliminating from the controversy all matters except the washer and the unpaid balance of the contract price, they thereby intended that these matters should be determined other than by the terms of the contract.  If respondent has performed its part of the contract in the manufacture and tender of the washer, it is entitled to the whole of the balance of the contract price.  The fact that the parties agreed that the contract, in so far as the delivery of the bunker and the payment of the $1,999 is concerned, should be regarded as a settlement of that portion of the contract, does not show that the balance due, if any, is to be determined by the reasonable value of the washer.  We think that the reasonable value of the washer was in no way involved,

and that the court properly excluded such question from consideration in determining the rights of the parties. The question was still one of contract price, and not of reasonable value.

During the trial counsel for appellant offered to prove by the testimony of Mr. Spike, the appellant's manager, that in a conversation with him some time after the completion and tender of the washer and after this controversy arose, Mr. Mather, the respondent's manager, had stated:

"That the coal washer which had been built was not in accordance with the contract or the specifications which had been entered into between plaintiff and defendant, and for that reason the defendant took and paid for the other articles which are mentioned in this contract, and that Caldwell Bros. Co. would not require defendant to receive or take the washer."

Objection by counsel for respondent to this offer was sustained, and the ruling thereon is here claimed as error. It is plain from the record that the defense was not made upon the theory that the parties had agreed to a full settlement of the controversy by the delivery of the bunker and payment of $1,999 upon the contract price. So this evidence is only material, if at all, as an admission tending to show that the respondent had not complied with the contract in the manufacture of the washer. This is the theory upon which counsel for appellant contends that the evidence was admissible. He argues that it was an admission against the interest of respondent made by its agent, and hence, binding upon it. It seems to us that this is nothing more than an attempt to prove statements of an agent amounting only to an expression of an opinion as to the rights and obligations of his principal after the transaction out of which such rights and obligations arose, and also after such rights and obligations had become a subject of controversy.

In 16 Cyc. 1008 it is stated:

"It is to be observed that in the law of agency it is no part

of an agent's duty to prejudice his principal by narrative statements construing or otherwise affecting his principal's rights or liabilities, or to discuss the propriety of his conduct even in relation to the subject-matter of the agency. On these grounds, rather than that of irrelevancy, rests the broad general rule that an agent's narrative of a past transaction does not affect the principal."

See, also, *Weideman v. Tacoma R. & Motor Co.*, 7 Wash. 517, 35 Pac. 414. We are of the opinion that the statements of Mather, sought to be proven, were not admissible as admissions against respondent.

It is contended by appellant that the proof shows that the washer was not a 400-ton washer, and therefore not according to the contract. This contention is based upon the assumption that the contract amounted to a guaranty that the washer was capable of washing 400 tons of coal per day, that the evidence shows that it would not wash that amount per day, and that the court should have so found; while respondent contends that the evidence would in no event warrant such a finding, and also that the contract did not amount to a guaranty as to the capacity of the washer. It will be noticed that there are no specific words of guaranty in the contract, and the contention that there was a guaranty of the nature claimed rests wholly upon the language of the contract designating or naming the washer. In the first letter of proposal it was designated as, "One 400-ton coal bunker and washer." In the second letter of proposal it was designated as, "A locally built washer of the Howe type." In the order it was designated as, "One 400-ton Howe type coal washer." In the letter of acceptance it is designated as, "One 400-ton Howe coal washer." In the specifications it is designated as, "One standard vertical type Howe coal washer, capacity 400-tons per day." According to the terms of the contract the washer was to be constructed according to specifications and blue print furnished. These, it appears from the record, provide in detail the manner of its con-

struction and its size. The specifications and blue print were prepared and agreed upon by the parties before, and at the time of, entering into the contract, and no contention is made by appellant that the washer was not constructed in strict compliance therewith. Under such circumstances we think the court was fully justified in declining to hold that there was a warranty or a breach thereof as to the capacity of the washer.

When the parties to a contract designate the article to be manufactured in the manner here involved, and then proceed to agree upon detailed specifications and drawings as to the size and manner of construction of such article, we think the contract itself shows that the manner of so designating the article was nothing more than the use of a trade name or term for it, and the question of whether or not it is constructed in compliance with the terms of the contract is to be determined by the detailed specifications and drawings, and not by the mere name they may choose to call it, or the manner by which they may designate it, and that such designation does not amount to a warranty as to its capabilities. 30 Am. & Eng. Ency. Law (2d ed.), 148; *Kleeb v. Bard*, 7 Wash. 41, 34 Pac. 138; *Diebold Safe & Lock Co. v. Huston*, 55 Kan. 104, 39 Pac. 1035, 28 L. R. A. 53; *Seitz v. Brewers' Refrigerating Mach. Co.*, 141 U. S. 510; 17 Am. & Eng. Ency. Law (2d ed.), 12.

We are of the opinion that the learned trial court correctly determined the rights of the parties, and its judgment is affirmed.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.