[No. 12140. Department Two. January 29, 1915.]

MIANUS MOTOR WORKS, *Respondent*, v. B. H. VOLLANS, *Appellant*.[1]

SALES—IMPLIED WARRANTY—SUITABILITY FOR SPECIFIC PURPOSE—CONTRACT—PERFORMANCE. Under a contract for the construction of a new hoist for a gasoline logging engine, in accordance with a blue print and specifications, there is no implied warranty that the same, when constructed according to the contract and specifications, will be suitable for the specific purpose for which it was intended, or that the engine specified in the contract, when connected up with the hoist as a completed rig, would furnish sufficient power to do the work.

Appeal from an order of the superior court for Snohomish county, Bell, J., entered February 14, 1914, granting a new trial, after rendition of a verdict of a jury favorable to the defendant, in an action on contract. Affirmed.

*Cooley & Horan* and *R. Mulvihill*, for appellant.

*Louis A. Merrick*, for respondent.

MAIN, J.—Plaintiff, as the assignee of the Automatic Machine Company, instituted this action for the purpose of recovering for certain machinery sold and delivered to the defendant. The defendant counterclaimed for damages alleged to be due to the breach of an implied warranty. The cause was tried to the court and a jury. The amount claimed to be due as alleged in the complaint was $1,082.10. The

[1]Reported in 145 Pac. 997.

jury returned a verdict in the plaintiff's favor for $66.80. A motion for a new trial was interposed upon the ground that the court had committed error in submitting the cause to the jury. This motion was sustained and an order entered granting a new trial, from which the defendant appeals.

The facts are substantially as follows: The Automatic Machine Company was a manufacturer and seller of gasoline engines. B. H. Vollans, the defendant, was engaged in the logging business, that is, removing piles and poles from the woods. On September 5, 1911, by conditional sale contract, the Automatic Machine Company sold to the defendant one twenty-five horse power two-cylinder gasoline engine, mounted on a double drum geared hoist, together with the other appurtenances for such a machine. This machine was used by the defendant in its logging operations for a number of months. The hoist apparently not being satisfactory, owing to the size and make of the drums, negotiations were entered into with the machine company relative to the construction of a new hoist. It was agreed that the old hoist should be taken back and a credit allowed for it in the sum of $250, and that a new hoist should be constructed at a cost of $1,750. From information and data given him by the foreman of the defendant and the representative of the machine company, one J. C. Biegert, owner of the Biegert Machine Works, prepared a blue print for the proposed hoist. Thereafter specifications and a contract were drawn. The specifications and contract were embodied in the same instrument. The blue print, specifications, and contract were submitted to the defendant, and the contract was signed by him. On February 8, 1912, the defendant returned the accepted copy of the specifications, together with his check for $300 as applying on the purchase price.

The specifications, among other things, provided for a twenty-five horse power engine to be fitted on a cast iron frame, and also that "We will use the same engine on this rig that you now have in the woods." This was the engine

which had been sold under the contract of September 5, 1911, and subsequently used by the defendant until it was sent to the Biegert Machine Works to be mounted upon the new hoist which was to be constructed by that company. Thereafter, the Biegert Machine Works constructed the hoist and mounted the engine thereon. When the machine was completed, the foreman went to the machine works for the purpose of testing it. The machine was taken to a vacant block near the machine works, and there by the foreman tested. Being satisfactory, it was subsequently shipped to the point where the defendant was conducting his logging operations. At the time of, or shortly after the test, an additional payment was made on the purchase price. During the time the Biegert Machine Works was constructing the hoist, the defendant's foreman had certain changes or additions made not set out upon the blue print or in the specifications. The authority of the foreman is not denied. After the machine was returned to the woods with the new hoist, it proved unsatisfactory. It is claimed by the defendant that it was not suitable for the purpose for which it was constructed in that it would not develop the power necessary to do the work intended.

The action, as already indicated, was for the balance of the purchase price. The trial court, in instructing the jury in one or more instructions, stated, in effect, that the rule of law that where an article is sold or manufactured for a specific purpose, there is an implied warranty that it is suitable for such purpose, was applicable to the facts in this case. After a hearing upon the motion for a new trial, the trial court became convinced that this instruction was erroneous, and granted a new trial.

Under the undisputed facts in this case, the rule of law stated in the instructions was inapplicable, and it was therefore error to give it. The motion for a new trial was rightfully granted. The rights of the parties in this case are fixed by their written contract. This contract called for a

hoist in accordance with the blue print and specifications. There is no claim that the hoist was not constructed as contracted for. The engine which was mounted upon the hoist was the one which the contract called for, and which had previously been used by the defendant.

This case falls within the rule announced in *Caldwell Bros. & Co. v. Coast Coal Co.*, 58 Wash. 461, 108 Pac. 1075. In that case there was a contract for one four hundred ton Howe type coal washer. In the first letter of proposal it was designated as "one four hundred ton coal bunker and washer." In the second letter of proposal it was designated as "a locally built washer of the Howe type." In the order it was designated as "one four hundred ton Howe type coal washer." In the letter of acceptance it was designated as "one four hundred ton Howe coal washer." And in the specifications it was designated as "one standard vertical type Howe coal washer, capacity four hundred tons per day." The specifications and blue prints were prepared and agreed upon by the parties before and at the time of entering into the contract. No contention was there made that the washer was not constructed in strict compliance therewith. It was there held that, the coal washer having been constructed in accordance with the specifications agreed upon by the parties, there was no warranty that it would wash four hundred tons of coal per day. In the course of the opinion it was said:

"When the parties to a contract designate the article to be manufactured in the manner here involved, and then proceed to agree upon detailed specifications and drawings as to the size and manner of construction of such article, we think the contract itself shows that the manner of so designating the article was nothing more than the use of a trade name or term for it, and the question of whether or not it is constructed in compliance with the terms of the contract is to be determined by the detailed specifications and drawings, and not by the mere name they may choose to call it, or the manner by which they may designate it, and that such

designation does not amount to a warranty as to its capabilities.  [Citing authorities.]"

But it is claimed in this case that the engine when mounted upon the hoist manufactured by the Biegert Machine Works would not develop the power necessary to do the work, and that the engine was not covered by the blue print and specifications.  The answer to this is that the engine and hoist became a completed rig.  The engine used was the one specified in the contract, and which had been used by the defendant for some months.  The contract and specifications were submitted to the defendant as a "proposal for gasoline logging engine." When the engine and hoist were connected, it was called by the foreman of the defendant, "a gasoline donkey."

The judgment will be affirmed.

CROW, MOUNT, FULLERTON, and ELLIS, JJ., concur.