[No. 20939.   Department One.   March 19, 1928.]

SEATTLE SCHOOL DISTRICT, *Appellant*, v. KING PLUMB-
ING & HEATING COMPANY, *Respondent*.[1]

[1] CONTRACTS (134)—PERFORMANCE—SUFFICIENCY. The cost of in-
stalling a different heating plant in a school building, made
necessary because of the inadequacy of the plant theretofore
installed, cannot be recovered from the contractor who had in-
stalled the kind specified under his contract with the school
district.

Appeal from a judgment of the superior court for
King county, Beals, J., entered June 25, 1927, upon
findings in favor of the defendants, in an action on
contract. Affirmed.

*Henry W. Pennock* and *James R. Gates*, for appel-
lant.

*Arthur C. Bannon*, for respondent King Plumbing
& Heating Co.

*Grinstead, Laube & Laughlin* and *R. John Lichty*,
for respondent Fidelity and Deposit Co. of Maryland.

PARKER, J.—The plaintiff, school district, seeks re-
covery from the defendant, heating company, for dam-
ages for alleged defective thermostatic equipment in-
stalled by it as a part of the heating and ventilating
equipment contracted to be installed by it in one of the
district's large high school buildings. The case pro-
ceeded to trial in the superior court for King county
sitting with a jury. At the conclusion of the introduc-
tion of evidence in behalf of the respective parties,
counsel for each moved the court to take the case from
the jury and decide the case in its favor as a matter
of law. Accordingly, the case was by the court with-
drawn from the jury's consideration and judgment

¹Reported in 265 Pac. 463.

rendered by the court denying recovery by the school district, from which it has appealed to this court.

The controlling facts may be summarized as follows: In May, 1922, the district caused specifications to be prepared for the heating and ventilating equipment of its high school building in question. These specifications contained, among other provisions, the following:

"NOTICE TO CONTRACTORS. . . . The contractor shall also furnish a surety bond in an amount equal to 10 per cent of the contract price of the entire work running to the district, which said bond shall provide that in case any defect or defects in any of the workmanship or materials entering into any part of the work shall develop or be discovered within one year after the final acceptance of such work, then the parties to the bond shall be bound to indemnify and save harmless the district from such defects, . . .

"14. GUARANTEE: This contractor shall guarantee the satisfactory operation of each and every part of the material and equipment installed by him for a period of one year and shall repair or replace, to the satisfaction of the engineer, any material or workmanship that may develop defects within one year from date of final payment, ordinary wear and tear being excepted.

"72. THERMOSTATS: New, single point, positive acting thermostats, of a design approved by the engineer, and finished the same as hardware in respective rooms, shall be provided .and installed where indicated on the plans. . . .

"73. THERMOSTATIC CONTROL: . . . All thermostatic work shall be complete in every way and shall, when tested, prove to be free from leaks and ready to operate and do all work intended under this specification. All thermostatic equipment shall be the best of its kind in material and workmanship and of a make approved by the engineer. . . ."

A copy of these specifications having been furnished to the heating company and other prospective bidders,

the heating company, on May 16, 1922, submitted its bid to the district proposing as follows:

"We the undersigned propose for the sum of one hundred two thousand twenty-one dollars ($102,021), to furnish all labor and material necessary for installing the heating and ventilating work in the Garfield High School, in accordance with the plans and specifications furnished. . . .    This proposal is based on . . . using thermostatic equipment manufactured by Cromwell Mfg. Co., . . ."

The district, considering this the best bid, on May 24, 1922, entered into a formal contract with the heating company by which the heating company agreed to install the proposed heating and ventilating system; the provisions of the contract, in so far as we need here notice them, being as follows:

"The contractor hereby agrees, under the inspection and direction of the superintendent selected by the board of directors, to furnish and supply at his or its own cost and expense, all materials and labor required for, and will finish and complete the heating and ventilating work for the Garfield High School, the city of Seattle, King county, Washington, according to the terms of this agreement, including kind of materials and fixtures below specified, and according to the plans and specifications for said work, . . .

"Fixtures to be used. . . .    Cromwell Mfg. Co.— regulation. . . .

"It is understood that final payment for said work shall not be made until thirty (30) days after this contract has been completely carried out and said work has been finally inspected and accepted by the Board of Directors: *Provided*, that before the making of such final payment the contractors shall show to the satisfaction of the Board of Directors and to all persons whom the Board of Directors shall designate for that purpose, that all just debts and claims incurred by the contractor in connection with said work have been paid, and that the terms and conditions of this agreement and the requirements of the plans and specifications,

herein referred to, have been fully complied with by the contractor; . . ."

We have quoted the specific proposal of the bid referring to "Thermostatic equipment manufactured by Cromwell Mfg. Co.," for the purpose of showing the evident meaning in the contract of the words "Cromwell Mfg. Co.—regulation," to render plain the meaning of the use of these words in the contract under "Fixtures to be used." On the day of entering into this contract, the heating company furnished a bond to the district with the Fidelity & Deposit Company of Maryland as surety thereon, conditioned that the heating company shall "save harmless and indemnify said school district from any defect or defects in any of the workmanship or materials entering into any part of the work covered by said contract which shall develop or be discovered within one year after the final acceptance of such work."

Soon thereafter the work of installing the equipment so contracted for was commenced by the heating company and completed on September 14, 1923, and, being thereupon subjected to tests by the district supervising engineer as to its efficiency and compliance with the contract and found to be operating satisfactorily, the work was accepted by the district on October 17, 1923, when it made final and full payment of the balance due upon the contract price to the heating company.

A few months thereafter, the thermostats which had been installed under the contract appeared defective and not capable of performing efficiently for the purposes designed. The Cromwell Manufacturing Company, at the request of the heating company, attempted to remedy such defects, but were unable to do so. We may at least so assume for present purposes. Thereupon the district removed the Cromwell thermostats

and installed in their place thermostats of a different make and kind, and, in so doing, expended the sum of $2,300, which, for present purposes, may be conceded to be the reasonable value of such installation.

Thereafter this action was commenced by the district, seeking recovery from the heating company of the sum of $2,300 so expended in the installation of the new thermostats, as the measure of its damage arising by reason of the alleged defects in the Cromwell thermostats installed by the heating company; the action manifestly being prosecuted upon the theory that the heating company, by reason of the provisions in the specifications, contract and bond above quoted, became warrantor of the efficient working of the Cromwell thermostats in so far as any insufficiency in that respect might develop within one year following the completion of the contract by the heating company.

[1] It is to be noticed that the specifications did not specify any kind or make of thermostats. We find therein only that they shall be "of a design approved by the engineer," and that they shall be "of a make approved by the engineer." The bid of the heating company in express terms was a proposal to furnish Cromwell thermostats; and the formal contract following the acceptance of the bid, manifestly, in specifically enumerating "Cromwell Mfg. Co.—regulation," meant, to both parties to the contract, the "thermostatic equipment manufactured by the Cromwell Mfg. Co.," as stated in the bid. Indeed, we think it clearly appears from the evidence that both parties to the contract so intended. Now, that being the express contract, we think, as the trial judge did, that the general indemnity expressed in the bond, in pursuance of the specifications considered as a part of the contract, that the heating company shall save harmless and indemnify the district for defects which shall

develop or be discovered within a year after the acceptance of the work, does not require the heating company to respond in damages to the district for the cost of its installing a different kind and make of thermostats, as the district elected to do upon becoming dissatisfied with the Cromwell thermostats during the year following the completion and acceptance of the work. This conclusion, we think, finds support in the following of our decisions dealing with contracts providing for the furnishing of expressly specified articles as to kind and the doing of construction work according to expressly agreed specifications: *Caldwell Bros. & Co. v. Coast Coal Co.,* 58 Wash. 461, 108 Pac. 1075; *Ward v. Pantages,* 73 Wash. 208, 131 Pac. 642; *Hurley-Mason Co. v. Stebbins, Walker & Spinning,* 79 Wash. 366, 140 Pac. 381, Ann. Cas. 1916A 948, L. R. A. 1915B 1131; *Huetter v. Warehouse & Realty Co.,* 81 Wash. 331, 142 Pac. 675; *Mianus Motor Works v. Vollans,* 83 Wash. 680, 145 Pac. 997; *Larson v. Tacoma School District,* 143 Wash. 414, 255 Pac. 113.

Some contention is made in behalf of the district rested upon the theory that the workmanship of the Cromwell thermostats was defective; that is, that the work of the manufacture of them was defective, though they were not defective in design; this evidently to avoid the effect of the district's express contract with the heating company to install Cromwell thermostats. It is argued that the heating company by the contract guaranteed that workmanship. It seems to us that such argument loses its force in the light of the district's election to altogether discard the Cromwell thermostats and replace them with another kind and make.

Some contention is made in behalf of the district rested upon the theory that the heating company became responsible for the choosing of Cromwell thermostats. This, we think, is wholly immaterial. True,

the heating company did so specify in its bid; but that, to our minds, does not change the force and effect of the express terms of the contract by which the district ultimately elected to have Cromwell thermostats installed.

The Fidelity & Deposit Company of Maryland, surety upon the heating company's contract bond, was made a party defendant in this action with the heating company. Since we conclude that the heating company is not liable in this action to respond in damages to the district, manifestly the surety is not liable. We have, for convenience of expression only, discussed the case as though the district and the heating company were the only parties thereto.

The judgment of the trial court, absolving the heating company and the surety from liability, is affirmed.

MACKINTOSH, C. J., MITCHELL, TOLMAN, and ASKREN, JJ., concur.