JOHN M. KINKEL v. SCOTT E. WINNE *et al.*

No. **13,128.** (72 Pac. 548.)

SYLLABUS BY THE COURT.

SALES—*Insurance Expiration Register—Caveat Emptor.* In the sale of a fire-insurance expiration register which, without the knowledge or consent of the vendor, had been secretly inspected and partially copied by third persons, made without any representation as to the character or quality of the register with reference to the privacy of the information imparted by it, and without any express warranty that it constituted an exclusive record of the matter it contained, the rule of *caveat emptor* applies.

Error from Reno district court; M. P. SIMPSON, judge. Opinion filed May 9, 1903. Affirmed.

*Prigg & Williams*, for plaintiff in error.

*H. Whiteside*, for defendants in error Winne & Winne.

The opinion of the court was delivered by

BURCH, J. : In the sale of an insurance business, involving the transfer of agencies from the vendors to a vendee, a renunciation of further activity in such business on the part of the vendors, and the future patronizing of the vendee with such business of that character as they might have at their disposal, a

written contract between the parties provided as follows:

"Said first party further agrees to turn over to said second party the expiration register owned by the firm of Winne & Winne, and to defend any suits that may be instituted by any person for the recovery of same, should litigation ensue."

The negotiations concluded with a bill of sale in the following terms:

"Know all men by these presents, that in consideration of three thousand and $\frac{no}{100}$ dollars, the receipt of which is hereby acknowledged, we do grant, sell, transfer and deliver unto John M. Kinkel, heirs, executors, administrators, and assigns, the following goods and chattels, viz.:

"One expiration register and the good-will and fire-insurance business of the firm of Winne & Winne.

"To have and to hold all and singular the said goods and chattels forever; and the said grantors hereby covenant with the said grantee that they are the lawful owners of the said goods and chattels; that they are free from all encumbrances; that they have good right to sell the same as aforesaid, and that they will warrant and defend the same against the lawful claims and demands of all persons whomsoever."

Part of the consideration was the promissory notes of the purchaser. In a suit upon certain of them in default, a failure of consideration was claimed because the expiration register had been wholly or extensively copied, whereby a rival agency became possessed of the information it imparted. It was not contended that the vendors were in any way privy to such copy or had any knowledge of it at the date of sale. To prove damages, the purchaser offered a witness to show the value of the expiration register of the insurance business of Winne & Winne, as an exclusive list, and the value of such register with a copy thereof extant.

The court sustained an objection to the proposed proof and withdrew the defense from the jury. Was this error?

It is said by plaintiff in error that the title to the expiration register partially failed because the book had been inspected and its entries transcribed. This, however, presents a flagrant non-sequitur. The reason is wholly inadequate as a guaranty of the assertion. The ownership of a book does not depend upon whether or not it has been read or duplicated. Dominion over it may be complete and absolute even though it may have informed the minds of multitudes. So in this case plaintiff in error owns the book and holds possession of it unvexed by the assertion of any hostile interest in it or title to it whatever.

It is next urged that the quality of the article is not what plaintiff in error assumed it to be, namely, an exclusive record of the matter exhibited by the book. To recover on this ground it is necessary to read into the written contract an agreement that the register contained the sole list of the Winne & Winne insurance expirations. Plainly this cannot be done. Express covenants are written out in full in the instruments of sale and these define the limits of the vendor's liability. Without some representation as to the quality or character of the register or as to the privacy of the information to be imparted by it, on which the purchaser relied and by which he was deceived, and without an express warranty, the rule of *caveat emptor* applies. There is no relation of trust and confidence between buyer and seller. The purchaser takes at his own risk as to quality and fitness. When title passes he has all the vendor engaged to give him and the courts cannot make another contract for him.

Plaintiff in error, however, seeks to interpose an implied warranty of fitness for a specific purpose, that of prosecuting the business of insurance, which was in the contemplation of the parties at the time of the sale, and *Shaw v. Smith*, 45 Kan. 334, 25 Pac. 886, 11 L. R. A. 681, is cited in support of his right so to do.  In that case the purchaser applied to a dealer to furnish him flaxseed for the purpose of raising a crop.  The vendor had no flaxseed on hand and undertook to supply the purchaser's requirements.  When the seed was delivered it appeared to be good, and was believed to be good by both parties, but, in fact, had lost its germinative power.  It was therefore held that under the circumstances a warranty might be implied that the seed should be sufficient for the purposes of sowing and raising a crop from it.  That case, however, was merely one of a familiar class in which the vendor undertakes to exercise his skill and judgment in the selection of an article appropriate to the vendee's needs, after the latter has trusted him to do so.  The underlying principle of the decision is expressed in the following language from the opinion :

"The purchaser had to rely upon the seller's furnishing to him the kind of seed agreed upon, and the seller in effect agreed that the seed furnished should be the kind of seed agreed upon."

In Leake on Contracts, second edition, 404, this rule is stated in a very luminous way :

"If an order be given for the manufacture or supply of an article to satisfy a required purpose, *that purpose, and not any specific article, being the essential matter of the contract,* the seller is then bound, as a condition of the contract, to supply an article reasonably fit for the purpose, and is considered as warranting that it is so.  If an order be given for a

specific article of a recognized kind or description,
.   .   .   and the article is supplied, there is no war-
ranty that it will answer the purpose described or sup-
posed, although intended and expected to do so.''
(See *Goulds v. Brophy*, 42 Minn. 109, 111, 43 N. W.
834, 6 L. R. A. 392.)

To the same effect is the classification of Mellor, J.,
in *Jones v. Just*, L. R. 3 Q. B. 196, 202 :

''First, where goods are *in esse*, and may be in-
spected by the buyer, and there is no fraud on the
part of the seller, the maxim *caveat emptor* applies,
even though the defect which exists in them is latent
and not discoverable on examination, at least where
the seller is neither the grower nor the manufacturer :
*Parkinson v. Lee*, 2 East, 314.    The buyer in such a
case has the opportunity of exercising his judgment
upon the matter ; and if the result of the inspection be
unsatisfactory, or if he distrusts his own judgment,
he may, if he chooses, require a warranty.    In such a
case, it is not an implied term of the contract of sale
that the goods are of any particular quality or are
merchantable.   .   .   .

''Secondly, where there is a sale of a definite exist-
ing chattel specifically described, the actual condition
of which is capable of being ascertained by either
party, there is no implied warranty : *Barr v. Gibson*,
3 M. & W. 390.

''Thirdly, where a known, described and defined
article is ordered of a manufacturer, although it is
stated to be required by the purchaser for a particular
purpose, still, if the known, described and defined
thing be actually supplied, there is no warranty that
it shall answer the particular purpose intended by the
buyer : *Chanter v. Hopkins*, 4 M. & W. 399 ; *Ollivant
v. Bailey*, 5 Q. B. 288 (E. C. L. R., vol. 48).

''Fourthly, where a manufacturer or a dealer con-
tracts to supply an article which he manufactures or
produces, or in which he deals, to be applied to a par-
ticular purpose, so that the buyer necessarily trusts
to the judgment or skill of the manufacturer or dealer,

there is in that case an implied term or warranty that it shall be reasonably fit for the purpose to which it is to be applied : *Brown v. Edgington,* 2 Man. & G. 279 (E. C. L. R., vol. 40) ; *Jones v. Bright,* 5 Bing. 533 (E. C. L. R., vol. 15). In such a case the buyer trusts to the manufacturer or dealer, and relies upon his judgment, and not upon his own.

"Fifthly, where a manufacturer undertakes to supply goods manufactured by himself, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article : *Laing v. Fidgeon,* 4 Camp. 169, 6 Taunt. 108 (E. C. L. R., vol. 1)."

So in *Mason v. Chappell,* 15 Grat. 572, 583, a purchaser ordered 150 barrels of a manure called "Chappell's fertilizer," which proved defective. In an action for breach of warranty against the vendor, the court said :

"If the plaintiff, relying on the defendant's skill and judgment, had applied to him to furnish a manure which would produce such effects as are attributed to 'Chappell's fertilizer,' without specifying what particular kind of manure he wanted, and the defendant had accordingly furnished an article which, instead of producing such effects, proved to be entirely worthless, there would be good ground for the proposition that there was an implied warranty from which liability would arise.  .   .   .

"But where a specific article is ordered and furnished, the law is well settled that, although the purchaser states the purpose to which he intends to apply it, there is no implied warranty on the part of the vendor that it is suitable for the purpose ; and he will not, in the absence of fraud or an express warranty, be held liable, however unfit and defective it may turn out to be."

See, also, *Deming v. Foster,* 42 N. H. 165 ; *Bartlett v. Hoppock et al.,* 34 N. Y. 118, 88 Am. Dec. 428 ; *Mc-*

*Donough v. Jolly Bros., Appellants*, 165 Pa. St. 542, 30 Atl. 1048; *Wisconsin Red Pressed-brick Co. v. Hood*, 54 Minn. 543, 56 N. W. 165; *McQuaid v. Ross and another*, 85 Wis. 492, 55 N. W. 705, 22 L. R. A. 187, 39 Am. St. Rep. 864.

In the present case the purchaser did not apply to the vendors for the talisman of a successful insurance business, or for a magic weapon or device with which to confound and rout his rivals and competitors, nor did he depend on them to furnish him with such a precious piece of property. He simply bought a fire-insurance business as it then stood, including the records pertaining thereto as they then presented themselves. The proposition was not: "Sell me a list of expirations known to no other living person "; it simply was: "Sell me this list now open before us." The case therefore falls within the principle of *Lukens v. Freiund*, 27 Kan. 664, 51 Am. Rep. 429, in which a vendor had on hand an article which he desired to sell. The purchaser finding it there bought it. There being no representation or express warranty relating to character or quality, the vendor was not liable.

Nor was the expiration register a part of the good-will of the Winne & Winne business, as plaintiff in error suggests. It was a specific item of personal property, distinguished from good-will by the terms of the contract. But if it were comprehended under the term "good-will" the purchaser has it. There was no representation or warranty as to the extent of the good-will bargained for. The expiration register was designed to point out the source of possible business in the future. This office it continues to perform.

A question of damages argued in the brief of plaintiff in error was determined adversely to him by the jury

upon sufficient evidence.   It therefore needs no further consideration; and, because of the view here taken of the right of plaintiff in error to recover at all, it is not necessary to examine the method adopted by him in the proof of damages.

The judgment of the district court is affirmed.

All the Justices concurring.