No. 11,617.

PICCOLI *v.* PARAMOUNT LUBRICANTS Co.

Decided October 11, 1926.

Action on contract.   Judgment for plaintiff.

*Affirmed.*

On Application for Supersedeas.

1.   CONTRACT—*Termination.*   Where defendant agreed to purchase gas and oil of plaintiff and to purchase filling station equipment installed by it in case he should terminate the agreement, he having refused to purchase except upon terms not satisfactory to plaintiff, it is held there was such a termination of the contract as obligated him to purchase the equipment.

2.   SALES—*Contract Price—Fraud.*   Under a contract involving the purchase of filling station equipment, in the absence of pleading and proof of fraud in procuring the execution of the contract, defendant was bound by the value of the equipment as fixed therein.

3.   *Ownership of Property—Evidence.*   In an action to recover the value of filling station equipment, evidence offered by defendant that plaintiff did not own the property, was properly excluded, there being no evidence that any person asserted title to it, or that defendant's possession thereof had been threatened.

4.   *Warranty.*   Where the seller of goods is not the maker and has no special knowledge concerning their manufacture, the parties stand upon grounds of substantial equality and there is no implied warranty against defects not discoverable by ordinary inspection and tests.

5.   *Implied Warranty—Question of Law or Fact.*   Whether or not an implied warranty exists ordinarily is a question of fact to be submitted to the jury, but where only one inference can be drawn from the undisputed facts, it becomes a question of law for the court.

6.     *Implied Warranty—Latent Defects—Burden of Proof.*   Where the purchaser of goods claims an implied warranty and alleges latent defects, the burden is upon him to establish that they were latently defective.

7.     *Implied Warranty—Chemical Action.*   There can be no implied warranty of gasoline tanks against deterioration caused by some chemical substance in the earth, nor otherwise caused while they are underground and beyond the control of the seller.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. William H. Andrew, for plaintiff in error.

Messrs. Melville, Melville & Temple, for defendant in error.

*En banc.*

Mr. Justice Sheafor delivered the opinion of the court.

The Paramount Lubricants Company, a corporation, brought this suit against Joseph Piccoli, doing business as the Radio Service Station, and recovered judgment for $1,961.50. The defendant prosecutes this writ of error, and applies for a supersedeas. The parties will be designated here as in the trial court.

The complaint contains three causes of action, but the first is not in controversy here and will receive no further mention. The second cause of action was to recover $612 for equipment installed by plaintiff in defendant's filling station, and the third cause of action to recover $1,344.85 for gasoline and other materials sold and delivered by plaintiff to defendant.

The defendant filed a cross complaint in which he claimed $1,266.20 for gasoline alleged to have been lost by leakage on account of defective tanks installed by plaintiff for defendant's use. Verdicts for the amounts claimed in favor of plaintiff on the second and third

causes of action were directed by the court. A verdict was returned in favor of defendant on the cross complaint for the amount claimed, but the court later rendered judgment thereon non obstante verdicto in favor of plaintiff and against defendant.

From the record it appears that plaintiff and defendant had entered into a written agreement relative to the equipment for the filling station, paragraph 8 of which reads: ''If at any time second party (defendant) desires to terminate this agreement, it is agreed that second party will purchase said equipment from first party at prices stated herein on terms of net cash, less ten per cent per annum from date of this agreement.''

The equipment referred to consisted of two 10-gallon Paramount Visible Pumps, two 550-gallon underground gasoline storage tanks, and two 22-gallon auxiliary tanks, complete with foot valve, pipe and fittings, the value thereof stated to be $700. This equipment, as stated in the contract, was the property of plaintiff and loaned to the defendant, he to have only the use thereof, except as provided in the contract.

Paragraph 8 above quoted is the foundation of the second cause of action, the plaintiff contending that defendant terminated the agreement and refused to pay for the equipment.

The contract, among other things, provided that during the life of the agreement defendant would make all of his purchases of gasoline to be sold at said place of business at the then market price at the time of such purchase, this being construed by the parties to mean that all gasoline to be sold, at the filling station in question, was to be, during the life of the agreement, purchased exclusively from the plaintiff. Plaintiff claims that defendant violated this provision of the contract.

The evidence relative to this point is in substance that defendant purchased all the gasoline and oil sold at that station from the plaintiff for about one year, ceasing to

buy from it sometime in October, 1925; that plaintiff had been giving credit to defendant from the time he started in business in October, 1924, until defendant's indebtedness therefor amounted to $1,344.85, and defendant neglecting, or being unable, to liquidate this indebtedness, plaintiff refused to extend him further credit, but was willing to continue selling him the merchandise C. O. D.; that defendant was willing to continue his business relations with plaintiff provided he got credit, but would not pay cash. The defendant testified that he bought all his gasoline from the plaintiff until the middle of October, 1925, when he had to quit buying from them, and thereafter bought from other companies; that he was at all times willing to do business with plaintiff, but that plaintiff refused to do business with him; that he could not pay cash.

Defendant testified that Mr. Herdic, sales manager for plaintiff, said to him that the company had suggested "that we set this $1,300 worth, whatever the bill called for at that time, and set it aside and start a new account just the same as if we hadn't done any business at all before, and he said, 'We will make a dump and charge it to you, and the next day when they make another dump you will pay for the last dump,' and I agreed to that; * * * but instead of sending gas the next day as he said he would, failed to do it; that he came up and wanted to know if we couldn't settle the bill.'' Defendant claims that this was an agreement to start a new account to give him credit, and that the evidence was sufficient for submission of that cause of action to the jury.

Defendant said he knew the contract provided that he should purchase plaintiff's equipment if he violated the contract; that he did not want to buy his gasoline and oil elsewhere unless forced to do it. It does not appear that plaintiff contracted to give defendant unlimited credit, and defendant says there was no such understanding or agreement; that he did not ask for

unlimited credit, and that sometimes he paid for it when it was delivered.

In view of this evidence, we think defendant did terminate the contract as claimed by plaintiff, and thereby obligated himself to purchase the equipment. The court did not err in directing a verdict as to this cause of action.

At the time that defendant violated the contract the tanks were new, having been put in to replace the first ones which had been installed. The defendant claimed that the pumps and tanks were not of the value to exceed $386, while plaintiff at the time the contract was entered into fraudulently represented that their value was $700; also that the pumps did not belong to plaintiff, and were the property of another. Defendant sought to introduce evidence in support of these contentions, but the evidence was properly rejected. He did not allege, and of course could not be permitted to prove, that he had been induced to enter into the contract through fraud, and in the absence of such pleading and proof he was bound by the value of the equipment as fixed in the contract. The evidence offered by defendant as to the ownership of the property related to the tanks only, but assuming that he intended his testimony to refer to the pumps, the objections to the evidence offered were properly sustained. No evidence was offered to show that anyone had claimed the pumps, or had asserted any title thereto, or that defendant's possession thereof had been threatened.

As to the third cause of action, a directed verdict for the plaintiff was proper, inasmuch as there appeared no defense thereto. The judgment rendered, however, was excessive, no allowance having been made for certain deductions amounting to $53.79. The judgment as to this cause of action should be modified by reducing the same to $1,273.68.

As to the cross-complaint: From the evidence of the plaintiff, it appears that the tanks were new when in-

stalled, and in good condition. They were manufactured by the Eaton Metals Products Company, and purchased from that company by plaintiff and installed by plaintiff in defendant's station; that they were supposed to last indefinitely; that they were manufactured of steel and were tested before being sent out, but when taken out of the ground at defendant's station sometime in August following their installation, they were found to be perforated with a large number of holes near the tops of the tanks; that plaintiff did not know what caused the perforations but thought it was the peculiar soil conditions where the tanks were placed and that the soil appeared to be mixed with lime.

Defendant testified in substance that there was nothing the matter with the soil; it was regular clay soil; that he lost over 6,000 gallons of gasoline; that lime would not affect the tanks; that it was around May, June and July when he realized that there was a serious shortage in the gasoline; that the replaced tanks were in use at the time of the trial; that when the first tanks were installed he was around there but not all the time watching them; that he saw the tanks on the ground; did not examine them in detail and didn't think it was necessary; that he had the opportunity and could have examined them; that plaintiff did not guarantee there were no latent defects in the tanks, and there was nothing said about defects; nothing said about how long the tanks would hold gasoline; the new tanks were put in about the latter part of August when they took up the old ones; he dealt with the plaintiff until the latter part of October, when he ceased buying from it; July and August showed the greatest loss of gasoline; thought the leakage commenced about April. The tanks were in use from the time they were installed some time early in October, 1924, until in April, 1925, before any leakage was discovered.

It does not appear that either party knew what caused the perforated condition of the tanks and pipe, and it is

beyond dispute that defendant lost by leakage a very considerable quantity of gasoline.

Defendant's contention is that the tanks were latently defective; that when they were installed there was an implied warranty that they were reasonably fit for the purpose intended, and that the evidence required the submission of the case to the jury.

We think the court did not err in rendering judgment non obstante veredicto in favor of plaintiff on the cross complaint.

In support of his position that there was an implied warranty defendant cites *Young v. Plattner Co.*, 41 Colo. 65, 67, 91 Pac. 1109; *Lorraine Mfg. Co. v. Allen Co.*, 77 Colo. 156, 234 Pac. 1055.

The Lorraine case does not apply to the facts established here. The exception noted in the Young case does not sustain defendant's position, but rather sustains the contention of the plaintiff.

The evidence discloses that there was no express warranty, and the question arises whether in the circumstances of this case a warranty was implied. The defendant had ample opportunity to inspect the tanks before they were installed, although it may be conceded that an inspection would have revealed nothing, and would have been useless. The plaintiff not being the manufacturer of the tanks, possessed no greater knowledge concerning their condition when installed than did defendant. There was no evidence to show that the tanks were defective when installed, but the uncontradicted evidence is that they had been tested before being sent out, and were in good condition. It further appears from the evidence that plaintiff had no knowledge of any latent defects.

The facts here established bring the instant case within the rule announced in the great majority of the cases that where "the seller not being the maker, and therefore having no special or technical knowledge of the mode in which it was made, the parties stand upon

grounds of substantial equality," and that "a dealer does not impliedly warrant against defects not discoverable by ordinary inspection and tests." *Kellogg Bridge Co., v. Hamilton,* 110 U. S. 108, 116, 3 Sup. Ct. 537, 28 L. Ed. 86; *Barnard v. Kellogg,* 10 Wall. 383, 19 L. Ed. 987; *Reynolds v. General Electric Co.,* (Colo.), 141 Fed. 551; *Hoyt v. Hainsworth Motor Co.,* 112 Wash. 440, 442, 192 Pac. 918; 24 R. C. L., Sec. 452, p. 179; *Morse v. Union Stock-Yard Co.,* 21 Ore. 289, 28 Pac. 2, 14 L. R. A. 157; *Kinkel v. Winne,* 67 Kan. 100, 72 Pac. 548, 549, 62 L. R. A. 596; *Orgill Bros. & Co. v. Everett* (Miss.), 103 So. 82.

In *Kinkel v. Winne, supra,* the court quotes the classification of Mellor, J. in *Jones v. Just,* L. R. 3 Q. B. 197, 202, as follows: "First, where goods are in esse, and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim caveat emptor applies, even though the defect which exists in them is latent, and not discoverable on examination, at least where the seller is neither the grower nor the manufacturer. * * * The buyer in such a case has the opportunity of exercising his judgment upon the matter; and if the result of the inspection be unsatisfactory, or if he distrusts his own judgment, he may if he chooses, require a warranty."

Whether an implied warranty exists ordinarily is a question of fact to be submitted to a jury, yet where as here, only one inference can be drawn from the undisputed facts, it becomes a question of law for the court. But assuming that there was an implied warranty, it could not have extended beyond a warranty that at the time of the installation of the tanks they were free from latent defects. There is no evidence tending to show that they were latently defective. The burden of proof was upon the defendant to establish that fact. The evidence that the tanks were in the ground and in use for at least six months before any leakage was discovered tends to prove that no defect existed at the time of their installation. The evidence shows that whatever the cause

of the perforated condition of the tanks, it was something for which the plaintiff was not responsible, had no knowledge of, and could not have guarded against. There certainly could be no implied warranty against defects caused by some chemical substance in the earth, nor otherwise caused while the tanks were underground and beyond the control of the plaintiff.

The supersedeas is denied, and the judgment modified by reducing the same from $1,961.50 to $1,907.71, and as thus modified is affirmed.