No. 27,317.

THE ILLINOIS ZINC COMPANY, *Appellee*, v. C. Y. SEMPLE, *Appellant*.

SYLLABUS BY THE COURT.

1. SALES—*Warranties—Fitness for Particular Purpose—Zinc Shingles Sold on Open Market*. Where zinc shingles were sold and furnished by a manufacturer under their patented and trade name, in accordance with the terms of a written contract which contained no words of warranty and where the shingles were not made specifically for the buyer, but were made and sold on the open market to anyone who wished to buy, there is no express warranty that they were fit for the purpose intended by the buyer although the seller knew the purpose for which they were purchased.

2. SAME—*Implied Warranty—Contract for Sale of Known Article*. A contract for the sale of a known, described and defined article, manufactured generally for the trade in which no warranty is expressed, does not give rise to an implied warranty of fitness for the purpose intended by the buyer, although the seller knew the buyer was purchasing it to accomplish that purpose.

3. SAME—*Warranties—Evidence*. The evidence examined, and it is held to be sufficient to support the findings that the representations and statements made by the seller in the transaction were not intended as nor understood to be warranties.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed April 9, 1927. Affirmed.

*Al. F. Williams, Don H. Elleman,* both of Columbus, *John Tomerlin* and *Stephen Chandler,* both of Oklahoma City, Okla., for the appellant.

---

Evidence, 22 C. J. p. 1252 n. 33. Sales, 35 Cyc. pp. 84 n. 13, 393 n. 74, 401 n. 40, 403 n. 46, 464 n. 91; 22 L. R. A. 187; 15 L. R. A. n. s. 868; 31 L. R. A. n. s. 783; 34 L. R. A. n. s. 737; 24 R. C. L. 187.

A. S. *Wilson, E. B. Morgan,* both of Galena, and *O. D. Buckles,* of Chicago, Ill., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:    The Illinois Zinc Company brought this action to recover for a balance alleged to be due for zinc shingles and accessories sold and delivered to the defendant, C. Y. Semple.    The plaintiff prevailed, and judgment was rendered against defendant for $10,683.68.    Defendant appeals.

There is no substantial question as to the goods sold and delivered and the prices fixed for them, but the defense was that they were sold to defendant under a warranty that they were reasonably fit for roofing purposes, whereas they were unfit and in fact worthless. In pleading his defenses, defendant alleged fraud in the transaction, but in argument defendant states that he did not attempt to prove fraud but had relied and was relying on breaches of an implied warranty and also an express warranty by which he suffered damages, and he asked for an award of $42,061.64, the difference between the amount of plaintiff's demand and the damages sustained by him on account of the breaches of warranty.    The case was submitted to the court without a jury and special findings of fact were made.    In respect to warranty, the court found that the plaintiff was engaged in manufacturing zinc shingles, a patented article, at Peru, Ill., and had advertised the shingles in trade journals.    The defendant, who had been engaged in mining in lead and zinc fields, desired to become a distributor for plaintiff in Oklahoma, and he opened negotiations with the plaintiff with a view of handling the shingles in that state.    After some correspondence he sent his agent and salesmanager, S. A. Maxwell, to the factory at Peru to examine the shingles, and, if satisfactory terms could be reached, to arrange for an agency contract.    Maxwell was shown through the plant and informed as to the processes, the length of time the plaintiff had been making shingles, that the shingles had been tested on roofs, some of which were inspected by Maxwell.    He was told that the shingles were satisfactory roofing material, that they had been placed on roofs for two winters and one summer, that the matter of expansion and contraction had been considered and taken care of and that they were satisfied they were good roofing as far as they had gone, but of course they could not be responsible for any unseen obstacles

that might arise. A bunch of the shingles was given to Maxwell to show to defendant, as well as some advertising matter. The sample shingles were given to defendant by Maxwell, who told him of the information he had gained at the factory, and within a few days defendant executed a written proposal to enter into a contract with plaintiff. This was accepted and a contract was entered into between the parties, by which it was agreed that defendant was to act as distributor for plaintiff, to handle its goods in Oklahoma, and was authorized to enter into contracts with dealers, subject to the approval of plaintiff. It was stipulated that defendant was to receive the goods at a discount from the prevailing list prices of twenty per cent on some of them and fifteen per cent on others, and a freight allowance of eighty cents per 100 pounds on all shipments made to him on his account. Payments on all shipments were to be made within thirty days from the date of invoice without further discount. There was a stipulation that either party might terminate the contract upon a ninety-day notice. Shipments were made to defendant from time to time from March 23, 1922, to about October of 1923, for which payments were made until May, 1923, and no further payments being made the plaintiff refused to make further shipments, and it also discontinued the manufacture of shingles.

The first shingles sold by the plaintiff contained two nail holes located near the edge of the shingles, the design being to drive one nail in the shingle, but a second hole was placed in it so that if one nail should strike a crack in the roofing, the other hole could be used. Some of the shingles first laid did not give satisfactory service, on account of the shingles slipping out of proper position. To remedy a situation where one nail was driven in a crack in the roofing another nail was driven in the upper part of the shingle; still later a new shingle was put out by the plaintiff in which a slot was made in the upper part of the shingle and the second nail was driven through this slot and allowance was thus made for expansion and contraction of the shingle.

The court found that the contract between the parties contained no express warranty, and further, that while there were many things said by the plaintiff in advertisements, letters and oral statements as to the value of the shingle as roofing material, these representations and statements were largely matters of opinion and were not intended as nor understood to be warranties. Among the findings as to the shingles and their value, is the following:

Illinois Zinc Co. v. Semple.

"The defendant in this case claims that the shingle in question is entirely worthless as a roofing material, and has tried the case as to the question of damages by reason of misrepresentation or breach of warranty entirely on this theory, and on this matter the court finds that many roofs were laid with the Illinois zinc shingles which gave a great deal of trouble and required repairing, and often relaying; but, on the other hand, the uncontradicted evidence shows that many roofs that have been constructed with these shingles, of both types, have lasted for several years and are making a good, serviceable roof. And as the evidence shows that from the nature of the product any defect in the roof will almost necessarily manifest itself in the course of a year or two, it is apparent that these roofs will be lasting and serviceable. From the fact that many roofs are in good condition it must be apparent that the fault must lie in the method of application.

"The court, therefore, finds that the Illinois zinc shingles were and are of some value and not entirely worthless as a roofing material, and even if there was a breach of warranty or a liability for misrepresentation on the part of the plaintiff, the defendant could not recover therefor for the reason that all of the evidence of damages was based on the theory or claim of the defendant that the shingles were without value as a roofing material."

Defendant claims under both express and implied warranties as to the quality and fitness of the shingles for roofing purposes. The rule is that an express warranty excludes an implied warranty relating to the same subject. (*Thresher Co. v. Nelson,* 105 Kan. 517, 184 Pac. 982; *Lumber Co. v. Kelley,* 117 Kan. 285, 231 Pac. 71.) The parties, as already stated, entered into a contract for the sale of the shingles. It was unambiguous and comprehensive in its provisions and appears to be quite definite and complete. It related to a specific article that was manufactured by the plaintiff, and although not long in use, it had been on the general market for about two years and had been sold to all who wished to buy. The contract fixed the terms upon which the shingles would be sold to defendant, including the prices to be paid. He was made distributor of the shingles in Oklahoma and given the exclusive right to sell them in that state. The shingles were to be furnished in carload lots and the performance of the agreement was to be subject to the contingencies of strikes, fires, floods, wars and delays in transportation. No mention was made of any warranty of the shingles. In view of the scope and completeness of the contract and of the prior rulings of this court on the point, it is clear that warranties or other conditions cannot be added to the contract. In *Ehrsam v. Brown,* 64 Kan. 466, 67 Pac. 867, the matter of warranty was involved, it having arisen on a contract for the sale of a machine in

which was stipulated the price, the time of payment, that title should remain in the vendor until payment was made, and some other provisions relating to the purchase, but it contained no words of warranty of the quality of the article sold or its fitness for a particular use, and it was held that a warranty could not be added to it. It was decided that the written agreement was the guide in determining the question and as—

"The terms of the contract, the extent of the obligation undertaken by the parties, are embodied in and limited to what is expressed in the writing, and, as no words of warranty are employed, it will be conclusively presumed that no warranty was intended or existed." (p. 471.)

A number of Kansas cases and other authorities are cited which support the decision. Of course, a different rule applies where fraud is pleaded and proven. Here fraud is not relied on.

Defendant further contends that if an express warranty is not shown, that an implied warranty arose from the statements, advertising and descriptive matter issued and distributed by the plaintiff representing that the shingles were reasonably fit for roofing purposes.

Much testimony was received as to the statements and propaganda mentioned, but the court found from all the testimony that they constituted dealers' talk or mere expressions of opinion and were not intended or understood by the parties to be warranties. The defendant contends that the shingles were sold by plaintiff and purchased by himself for roofing, and that there is an implied warranty at least that they were reasonably fit for that use. Apart from the fact that the written contract is presumed to include all the terms, conditions and obligations of the parties, there is another obstacle to the claim of an implied warranty of fitness for the intended purpose. The shingles were not made upon a special order of defendant or for a specified purpose of his own, but were specific articles which were manufactured for the general trade. They were offered on the market by their patent and trade name, to wit: "The Illinois Zinc Shingles," just as cedar or other kinds of shingles are made and sold to the public generally. It may be said, too, that they were open to inspection and in fact were inspected by defendant before the contract was made. He was engaged in mining zinc and presumably was acquainted with the qualities of such material. Probably that accounts for the fact that he did not ask for a warranty, and it appears that he continued to buy and use the shingles

Illinois Zinc Co. v. Semple.

from February, 1922, until November, 1923, long after he had discovered the defects of which he now complains, and at the end was insisting that another car of the shingles be furnished to him. Under the circumstances and in the absence of fraud he was not entitled to claim an implied warranty of the fitness of the shingles for the purposes for which they were purchased, although both parties knew the intended purpose for which they were to be used. As we have seen, they were a described and definite article of merchandise made for the general market, and it has been held that there is no implied warranty in such a transaction that the article is fit for the particular purpose. In *Lukens v..Freiund,* 27 Kan. 664, it is held that if a manufacturer undertakes to make an article for a specific and understood purpose, an implied warranty may arise that it will be reasonably fit for the purpose intended, but when there is a purchase of a specific article of a recognized kind or description and the article is supplied, no implication of warranty arises. The court, in reviewing the authorities, quoted with approval the following:

"On the whole, therefore, it may be doubted whether there be any instance in which a knowledge of the object for which a specific chattel is bought will raise an implied warranty that it is fit for that purpose, although a failure to acquaint the vendor with its ·unfitness may be evidence of fraud, and thus render the vendor liable in an action of tort." (p. 668.)

The question whether the purchase of an article designated as a "number four fireproof safe," upon an order which contained no words of warranty, implied a warranty that it was fireproof and would protect its contents from any exposure to fire, was presented to the court and it was held that as the safe had not been manufactured for the purchaser but was made and sold to whomsoever would buy, there was no implied warranty of the quality. (*Safe & Lock Co. v. Huston,* 55 Kan. 104, 39 Pac. 1035.) In *Kinkel v. Winne,* 67 Kan. 100, 72 Pac. 548, a purchaser claimed an implied warranty of fitness for a specific purpose of a thing sold, and in that case the following rule was approved:

"Where a known, described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, described and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." (p. 104.)

A case quite similar to the present one is *Ehrsam v. Brown,* 76 Kan. 206, 91 Pac. 179. The plaintiff first asked for damages on the

theory that there was an express warranty (*Ehrsam v. Brown,* 64 Kan. 466, 67 Pac. 867), but he lost on that contention. He then amended his petition and asked damages upon the theory that the law implied a warranty of the fitness of a machine for making flour, a known, described and specific machine, which was actually supplied to the buyer. The court held that although the seller was aware of the purpose for which the machine was bought, there was no implied warranty that it would answer for that particular purpose. The question was carefully considered and a great number of authorities were cited which upheld the view taken and to which reference is made. That decision is conclusive against a warranty of any kind in this transaction and against a recovery of damages by the plaintiff. Upon the evidence the court was justified in finding that no misrepresentations were made by plaintiff and relied on by the defendant, and further finding that the representations and statements made were not intended as nor understood to be warranties.

The judgment is affirmed.