**BRADEN et al. v. MOUNTAIN IRON & SUPPLY CO.**

Circuit Court of Appeals, Eighth Circuit.
March 21, 1929.

No. 8213.

C. G. Yankey, of Wichita, Kan. (John L. Gleason and Kenneth K. Cox, both of Wichita, Kan., and C. L. Aikman, of El Dorado, Kan., on the brief), for appellants.

J. B. McKay, of El Dorado, Kan. (Joseph G. Carey, of Wichita, Kan., on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

McDERMOTT, District Judge. The trial court struck the vital parts from an amended answer and counterclaim. Thereupon judgment was entered for the plaintiff upon the pleadings. The plaintiff (appellee) sued for the price of some 4″ oil well casing. The defendants claimed that some 5³⁄₁₆″ casing, previously bought and paid for, parted while being run, and as a result the defendants lost their well, and they therefore counterclaim for some $14,000. There is no claim of express warranty. The defendants rely upon an implied warranty of fitness.

The answer alleges that the plaintiff was a "supply house" engaged in the business of "dealing and selling to producers and drilling contractors" casing and other oil well equipment; that the plaintiff knew about the well defendants were drilling, knew its depth, and the strength necessary to run such a long string of casing, some 3,700 to 4,000 feet; the plaintiff knew the difficulties and dangers in running such a string, and knew casing and the qualities and fitness necessary for such a job. The defendants then allege:

"That on or about the 25th day of July, 1926, the defendants after having informed the plaintiff of the character of well they were drilling and that the defendants wanted to purchase a string of five and three-sixteenths (5³⁄₁₆) inch casing suitable and fitted for drilling said well the plaintiff thereupon recommended a string of five and three-sixteenths (5³⁄₁₆) inch twenty (20) pound Standard Seamless Casing as most suitable

and fitted for this purpose, and that it was specially fitted and specially manufactured for the purpose of being used in a well of this type and to meet all of the exigencies and conditions reasonably to be expected to be encountered in a well of this depth drilled in this locality. Plaintiff offered to sell and solicited defendants to purchase Standard Seamless Casing as fitted and in every respect suitable for this special and particular purpose of drilling this particular well. That defendants upon such recommendations and relying thereon orally purchased from plaintiff the following casing: 4,119 feet 3 inches of 5¾₆ inch 20 pound Standard Seamless Casing, and plaintiff, in the regular course of business, sold to defendants 4,119 feet 3 inches of 5¾₆ inch 20 pound Standard Seamless Casing for the sum of Four Thousand Seven Hundred Thirty-four and 09/100 Dollars ($4,734.09)."

"That the same persons [agents named] made the recommendations referred to in the foregoing allegations and that such recommendations were made at various times, the exact date of which the defendants cannot state, but during the month of July, 1926, and thereabout.

"Defendants do not remember the exact words that were used, but the substance and effect of the words used were that the particular casing in question was recommended and offered as suitable and fitting for the work which defendants had to do in drilling a well of the depth, character and kind which defendants were then undertaking to do in the locality and at the place at which the said well was to be drilled."

It is then alleged that the casing was bought and shipped to the defendants, who received it, unloaded it, and hauled it to the location, and later attempted to run it, when it parted; that the defendants had no means of testing such casing, and paid for it before they ran it; that defendants ran the casing carefully, but it nevertheless parted. Concerning the casing, the defendants allege:

"That said casing dropped and caused the damage as herein alleged by reason of the fact that the same was made of insufficient and worthless material and was constructed in such a manner that it was unfitted and not suitable for the purpose for which it had been sold to and purchased by the defendants. That it was not of sufficient strength to withstand and carry its own weight, which casing used for this purpose would necessarily have to do and also to be suitable and fit for this purpose would have

to carry great additional weight and pressure, which this casing in its poor, weak and defective condition could not and would not have done in completing the drilling of said well.

"That by reason of the general unfitness and insufficient and defective condition of said casing the defendants are unable to state each and all of the defects which caused or contributed to the failure of said casing to perform the service for which it was purchased by and sold to these defendants, but that among its other defects the said casing was defective in that the collar upon the top joint and at which point the said casing was suspended in said hole, and which collar had been placed thereon by plaintiff prior to the time of its receipt by defendants and as to which collar the defendants had no knowledge and no opportunity to examine the same, was defective and insufficient as these defendants believe in the following particulars:

"a. The collar was made of defective and insufficient material.

"b. That it was not made in a good, workmanlike manner suitable for the purpose for which it was intended to be used and sold.

"c. That the said collar was further defective in that in the making of the same it was so threaded and machined that instead of having an equal and sufficient amount of material on all of its sides that on one side it was so cut away that the quantity of material left on such side was insufficient to withstand the strain that it necessarily would be put to in its use as a casing and such side rolled back, causing the weight of said casing then suspended to be hung upon and borne by the other side of said collar, which was insufficient to carry said weight and which caused said collar to come off from the casing, allowing the entire string to drop into the hole causing the damage and injury as alleged herein."

We have then a case where the defendant bought a standard article with a trade-name. Four times in one paragraph the defendants describe it by its trade-name, "Standard Seamless Casing," the capital letters denoting the proper name being those of defendants. It was bought on the plaintiff's recommendation; five times in the same paragraph the defendants use the words "recommended" or "recommendations" as an accurate description of the plaintiff's act. This occurs in an amended answer. After the trial court's order to strike, accompanied by a memorandum opinion, and after the trial court had

offered the defendants 20 days to plead further, if desired, the defendants declined to plead further. It must be assumed that the amended answer stated the case as strongly as the facts justify. The defect was a latent one, for the defendants received, hauled, stored, and ran this casing—handling it at least three times—without discovering any defect. It is further alleged that the plaintiff sold this casing for "the regular and listed price established by the plaintiff for casing of this size and good quality" which, it is alleged, was a fair price for good casing. No express warranty is alleged, and no extra consideration paid for such an express warranty, which it is fair to assume would be demanded if a dealer were to assume the risk always attendant upon running a string of pipe a half mile or more into the ground.

There is no occasion for undertaking to improve upon the statements heretofore made by this court as to the law of implied warranty of fitness or suitability; and this case affords no reason for an effort to draw with precision the line which marks the boundaries of that rule. Like questions involving due process of law, it is better only to determine upon which side of the line a particular case falls. We are not unaware of the proper tendency of the law to follow the lead of enlightened business and to place more and more responsibility on the seller. On the other hand, it must be remembered that it makes for the stability of business transactions, particularily in transactions of this importance, for the buyer to ask for a warranty if he wants one. Neither is there need, in this case, to explore any difference in the responsibility of a dealer as distinguished from a manufacturer.

The facts do not give rise to any implied warranty. In Davis Calyx Drill Co. v. Mallory (C. C. A.) 137 F. 332, 69 L. R. A. 973, the buyer told the seller what he wanted to do with a drill, and the seller told him that his drill was just what he needed. The drill sold would drill holes, but wouldn't drill the particular holes the buyer had in mind, as he wanted them drilled. This court held there was no implied warranty, and said, speaking through Judge Sanborn:

"An implied warranty that an article will be fit for a particular purpose may be inferred from a contract to make or supply it to accomplish that purpose, because the accomplishment of the purpose is the essence of the undertaking. But no such warranty arises out of a contract to make or supply a specific, described, or definite article, although the manufacturer or dealer knows that the vendee buys it to accomplish a specific purpose, because the essence of this contract is the furnishing of the specific article, and not the accomplishment of the purpose. In other words, a warranty that a machine, tool, or article sold is fit and suitable to accomplish a particular purpose or to do a specific work may be implied when the manufacturer or dealer knows the purpose or work to be effected, and the purchase of the machine, tool, or article is in reality an employment of the vendor to do the work by making or furnishing a machine, tool, or article to effect it. * * *

"But no implied warranty that a machine, tool or article is suitable to accomplish a particular purpose or to do a specific work arises where the vendor orders of the manufacturer, or purchases of the dealer, a specific, described, or definite machine, tool, or article, although the vendor knows the purpose or work which the purchaser intends to accomplish with it and assures him that it will effect it. * * *

"The reason for this rule is conclusive and unanswerable. When a manufacturer or dealer agrees to make or furnish an article that will accomplish a particular purpose, the accomplishment of the purpose is the substance of his undertaking, and he is free to make or to supply any article that will do the work required. If he furnishes an article that will accomplish this purpose, he performs his contract, although the article he supplies may differ widely from that contemplated by the purchaser when he made the agreement to buy. On the other hand, when the manufacturer or dealer contracts to make or to deliver a specific and definitely described article, to enable the vendor to accomplish a known purpose, the essential part of this obligation is the delivery of the identical article described in the contract; and the delivery of a different article, although it may better accomplish the desired result, is not a performance of his agreement, and does not entitle him to recover the purchase price."

These statements are supported by an abundant citation of authorities, including the leading cases of Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86, and Seitz v. Brewers Refrigerating Co., 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837.

Later, in Reynolds v. General Electric Co., 141 F. 551, this court, speaking through the same great jurist, said:

"But where such a purchaser buys of a dealer a definite machine of known manufacture, which has been, or is to be, made by a builder who is not the vendor, and the vendee knows this fact, there is no implied warranty by the dealer, either against latent defects or that the machine or article will be suitable for the purposes for which such articles are commonly used, because the purchaser has the same knowledge and means of knowledge of these subjects as has the dealer. The vendee knows that they both rely on the character and reputation of the manufacturer."

In an action for negligence, this court has recently held that there is no liability because of any implied warranty of fitness upon a lumber dealer who sells lumber for a scaffold, who was advised of the purpose for which the lumber was wanted, and who agreed to sell "fresh, clear, strong, and sound stock, 6" in width by 6" in thickness and of 20' in length," where the timber was unsound and broke. Kramer v. Mills Lumber Co. (C. C. A.) 24 F.(2d) 313.

The decisions of the Supreme Court of Kansas are to the same effect. In the case of Kinkel v. Winne, 67 Kan. 100, 72 P. 548, 62 L. R. A. 596, the law is stated: "Where a known, described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer."

See, also, Ehrsam v. Brown, 76 Kan. 206, 91 P. 179, 15 L. R. A. (N. S.) 877; Safe & Lock Co. v. Huston, 55 Kan. 104, 39 P. 1035; Jarecki Mfg. Co. v. Merriam, 104 Kan. 646, 180 P. 224; Illinois Zinc Co. v. Semple, 123 Kan. 368, 255 P. 78; Burgner-Bowman Lbr. Co. v. Mercantile Co., 114 Kan. 10, 216 P. 815, is not to the contrary; in that case the seller did not deliver the thing he sold.

Reliance is placed on the Uniform Sales Act. This has not been enacted in Kansas, although the Legislature has had the opportunity to do so on several occasions. It is interesting to observe, however, that paragraph 4, of section 15, of the proposed act, reads as follows: "(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

Cases from other jurisdictions do not persuade, for admittedly there are varying shades of the doctrine. Cases where a buyer tells what he wants done, and the seller agrees to fill his want and selects the article himself, fall on the other side of the fence. Judge Pollock's decision was right; the reasons given by him sound; and the judgment is affirmed.